UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MINOHOR SINGH,<br>Individually and On Behalf of All Others<br>Similarly Situated,<br>    *Plaintiff*,<br><br>v.<br><br>CIGNA CORP., ET AL.,<br>    *Defendants*. | CIVIL ACTION NO.<br>3:16-cv-00182 (VLB)<br><br>September 1, 2017 |

## RULING AND ORDER ON MOTION FOR RECONSIDERATION [DKT. 74]

Before the Court is Lead Plaintiff's Motion for Reconsideration of the Court's Order directing Lead Plaintiff to file a proposed amended complaint in contemplation of his request for leave to amend should the Court grant Defendants' Motion to Dismiss. [Dkt. 74]. This motion is opposed by Defendants. *See* [Dkt. 76 (Opp'n on Mot. Reconsideration)]. For the foregoing reasons, the Court GRANTS in part and DENIES in part Lead Plaintiff's Motion for Reconsideration.

The Court will briefly review the procedural posture of this case. Jyotindra Patel filed the initial complaint in this lawsuit on February 4, 2016. [Dkt. 1 (Compl.)]. The Complaint raised allegations of violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act" or "Act"), codified under 15 U.S.C. §§ 78j(b) and 78t(a) respectively, and Rule 10b-5 promulgated by the Securities Exchange Commission ("SEC") under 17 C.F.R. § 240.10b-5, that occurred during the Class Period. In April 2016, Plaintiff moved to appoint Minohor Singh as Lead Plaintiff, which the Court granted. [Dkt. 28 (Mot. Appoint Counsel);

1

Dkt. 34 (Order]. Singh thereafter amended the complaint, raising substantially more factual allegations. *See* [Dkt. 40 (Am. Compl.)]. In September 2016, Singh filed a Motion to Modify Pretrial Deadlines indicating intentions for requesting leave to amend due to "key developments" since the previous filing. [Dkt. 50 at 3]. Defendants opposed this objection and argued that Singh had six months from the filing of the original complaint and two months from his appointment as Lead Plaintiff to amend the complaint. [Dkt. 51 (Opp'n Mot. Modify) at 2].

The Court held a telephonic conference on October 7, 2016, and granted Lead Plaintiff a modification of the scheduling order as well as leave to amend. *See* [Dkt. 54 (Tr. Tel. Conf.) at 19-21]. During the hearing, signaling the insufficiency of the Complaint, the Court specifically asked Lead Plaintiff's counsel, "[D]o you expect that if you were to amend you would be able to state with more particularity the basis of your claims?" *Id.* at 15:9-14. Counsel responded in the affirmative. *See id.* 15:15-18. Defense counsel posited that discovery had been ongoing for several months and that they "were prepared and have worked hard under [the Court's] order to prepare a motion to dismiss that [they] were prepared to file in 10 days. . . ." *Id.* at 17:24-18:3. Upon considering the arguments the Court determined Lead Plaintiff should have "a reasonable opportunity to complete discovery to the point where they are able to file an amended complaint that fairly reflects all of the information that they can reasonably acquire in conducting thorough due diligence of their allegations." *Id.* at 18:8-16. The Court reasoned, "[W]e want this matter to be resolved one way or the other on the merits with full consideration of all of the relevant facts, and if that takes an additional couple of months to do I think it's time

well spent for everyone involved, including Defendants." *Id.* at 19:14-20. Lead Plaintiff thereafter filed the 87-page Second Amended Complaint, which is operative today.

Defendants filed the Motion to Dismiss on February 13, 2017, and the motion is now fully briefed. Lead Plaintiff requests that should the Court grant Defendants' Motion to Dismiss it should allow Lead Plaintiff to replead the Second Amended Complaint. The Court reviewed the Second Amended Complaint in the context of the Motion to Dismiss and on August 28, 2017, it ordered Lead Plaintiff to file a proposed Third Amended Complaint. [Dkt. 72]. Rather than accepting the opportunity to replead a second time as offered by the Court, Lead Plaintiff now seeks reconsideration of the offer to replead.

In the Second Circuit, the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see* D. Conn. L. R. 7(c) (requiring the movant to file along with the motion for reconsideration "a memorandum setting forth concisely the controlling decisions or data the movant believes the Court overlooked"). There are three grounds for granting a motion for reconsideration: (1) "intervening change of controlling law"; (2) "the availability of new evidence"; or (3) a "need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Fed. Practice & Procedure*,

§ 4478 at 790). If the Court "overlooked controlling decisions or factual matters that were put before it on the underlying motion," reconsideration is appropriate. *Eisemann v. Greene*, 204 F.3d 393, 395 (2d Cir. 2000) (per curium). By like measure, a motion for reconsideration should be denied when the movant "seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257; *Patterson v. Bannish*, No. 3:10-cv-1481 (AWT), 2011 WL 2518749, at *1 (D. Conn. June 23, 2011) (same).

Lead Plaintiff's Motion for Reconsideration does not address the standard set forth above. Given that Lead Plaintiff does not raise any "intervening change of controlling law" or "the availability of new evidence," *Virgin Atl. Airways*, 956 F.2d at 1255, the Court assumes Lead Plaintiff seeks to "correct a clear error or prevent manifest injustice."

Lead Plaintiff requests that the Court grant leave to amend should it find the Second Amended Complaint fails to state a claim upon which relief may be granted. Leave to amend is to be given freely "when justice so requires," Fed. R. Civ. P. 15(a), unless the moving party acted with "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed," or the amendment would create undue prejudice to the opposing party or be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "District courts typically grant plaintiffs at least one opportunity to plead fraud with greater specificity when they dismiss under Rule 9(b)." *ATSI Comms., Inc.*, 493 F.3d 87, 108 (2d Cir. 2007). However, it is well within the court's discretion to grant leave to amend under Fed. R. Civ. P. 15(a) "and a district court may therefore properly deny leave to amend where a plaintiff has already been given one opportunity to plead fraud with greater

4

specificity." *Abuhamdan v. Blyth, Inc.*, 9 F. Supp. 3d 175, 212 (D. Conn. 2014) (quoting *Endovasc, Ltd. v. J.P. Turner & Co., LLC*, 169 F. App'x. 655, 657–58 (2d Cir.2006)).

Section 78u-4 of the PSLRA contemplates that in general "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss. . . ." 15 U.S.C. § 78u-4(b)(3)(B). When, after conducting the telephonic conference, the Court granted leave to amend the Amended Complaint and extended the deadline for the motion to dismiss, there were practical implications enabling Lead Plaintiff to continue in his pursuit of discovery well past the period typically allowed. The Court contemplated these implications and determined it fair and necessary to give the Lead Plaintiff an opportunity to plead with particularity, in compliance with Rule 9(b), from the outset. As the Court directed, Lead Plaintiff was granted a modification of the scheduling order and leave to amend with the understanding that he would exercise his due diligence and replead stating his claims with particularity, alleging specific facts constituting the elements of the claims asserted.

The Second Amended Complaint indeed provides more factual allegations indicating Lead Plaintiff attempted to cure some defects with particularity. For example, the Second Amended Complaint contains a new section documenting that Cigna received 75 notifications of non-compliance from CMS, with explicit references to the content of certain notifications. [Dkt. 57 ¶¶ 115-18]. The Second Amended Complaint also raises new allegations that Defendant Appel was required to report to senior management information about Medicare compliance. *Id.* ¶¶

159-61. These allegations are clear examples of Lead Plaintiff's attempt to address the Rule 9(b) particularity requirements.

However, notwithstanding the Second Amended Complaint is 87 pages, it is replete with conclusory and irrelevant allegations, and it still falls short on facts necessary to satisfy the Rule 9(b) pleading standard. Specifically, the Second Amended Complaint does not identify the types of notifications issued by CMS to Defendant Cigna; it does not allege the type of compliance letter issued by CMS, although there are 4 distinct types of letters with varying severities and sanctions. It does not state whether the deficiencies cited in the compliance letters were resolved and when. It does not allege when the letters were issued or the factual content of the compliance letters. The Second Amended Complaint does not include relevant SEC filings made by Cigna during the relevant period (with a few exceptions) nor does it include factual allegations about highly relevant time periods. Furthermore, the Second Amended Complaint does not allege what Cigna knew at the time it made the alleged material misstatements and/or omissions and when it came to know it. Essentially, Lead Plaintiff has marginally, if at all, pleaded that a duty to disclose arose, or at what point and under what circumstances this duty could have arisen. *See Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 101 (2d Cir. 2015) (stating the duty to disclose instead arises where there is "a statute or regulation requiring disclosure" or a "corporate statement that would otherwise be inaccurate, incomplete, or misleading"). The allegation that certain compliance letters were issued in certain months without specifying the nature of the compliance letter and whether the subject matter of the letter was resolved may be

insufficient to establish the specificity necessary to adequately plead fraud, given the progressive compliance regime of the CMS. In addition, Cigna's lack of expertise as alleged in the Second Amended Complaint together with the temporal proximity of the escalation in the number of compliance letters and the suspension without further specificity as to the nature and the pendency of the performance deficiencies and compliance letters, combine to undermine Lead Plaintiff's claims.

Lead Plaintiff has similarly failed to tailor the Second Amended Complaint's allegations to support a *strong* inference of scienter. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). It is incumbent upon Lead Plaintiff to provide more specifics than a broad, roughly two-year time period for which certain Defendants "suspiciously sold stock." [Dkt. 40 ¶ 180]. Lead Plaintiff must also plead more than allegations suggesting that the certain Defendants "*must have known* their statements to be untrue." *In re BioScrip, Inc. v. Sec. Litig.*, 95 F. Supp. 3d 711, 738 (S.D.N.Y. 2015).

To the extent Lead Plaintiff believes the Motion to Dismiss does not provide sufficient notice of the Second Amended Complaint's insufficiencies, the Court notes that the Motion to Dismiss aptly identifies the issues. *See Endovasc, Ltd. v. J.P. Turner & Co., LLC*, 169 F. App'x 655, 657 (2d Cir. 2006) (observing "the district court provided [plaintiff] an opportunity to amend its pleadings in light of defendants' dismissal papers, thus granting [plaintiff] an 'opportunity to plead fraud with greater specificity,'") (quoting *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986)); *Abuhamdan v. Blyth, Inc.*, 9 F. Supp. 3d 175, 212 (D. Conn. 2014) (granting motion to dismiss and denying leave to amend after giving plaintiff the opportunity

7

to replead prior to the court's ruling and upon reviewing the defendants' motion to dismiss).

Lead Plaintiff has already been given a chance to replead with greater specificity, both after the telephonic conference and recently with the Court's order. See *Abuhamdan*, 9 F. Supp. 3d at 212-13. Lead Plaintiff believes he should be given another opportunity "after hearing the Court's assessments of the merits of the Complaints." [Dkt. 68 at 49]; *see also* [Dkt. 75 (Mot. Reconsideration) at 2]. To avoid any potential for "manifest injustice," the Court has now provided notice to Lead Plaintiff of the Second Amended Complaint's fundamental deficiencies.

Accordingly, the Court DENIES the relief sought in Lead Plaintiff's Motion for Reconsideration to the extent he seeks leave to amend the Second Amended Complaint *after* the Court issues its ruling on Defendants' Motion to Dismiss, [Dkt. 66]. The Court GRANTS Lead Plaintiff's Motion for Reconsideration to the extent Lead Plaintiff seeks relief from filing a proposed amended complaint on September 4, 2017, and ORDERS Lead Plaintiff to file a Third Amended Complaint on or before September 16, 2017.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: September 1, 2017